**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALAN QUINONES,**

                     **Plaintiff,**

         **v.**

**CITY OF BINGHAMTON et al.,**

                     **Defendants.**
_____

**3:19-cv-1460**
**(GLS/ML)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Ronald R. Benjamin | RONALD R. BENJAMIN, ESQ. |
| P.O. Box 607 | |
| 126 Riverside Drive | |
| Binghamton, NY 13902-0607 | |
| | |
| **FOR THE DEFENDANTS:** | |
| Goldberg, Segalla Law Firm | SHANNON T. O'CONNOR, ESQ. |
| 5786 Widewaters Parkway | ASHLEY K. BOISVERT, ESQ. |
| Syracuse, NY 13214 | |

**Gary L. Sharpe**
**Senior District Judge**

**MEMORANDUM-DECISION AND ORDER**

### I. Introduction

Plaintiff Alan Quinones commenced this action against defendants

City of Binghamton; Richard David, Mayor of the City of Binghamton;

Joseph Zikuski, Chief of Police for the City of Binghamton; and John Ryan,

Assistant Chief of Police for the City of Binghamton, pursuant to 42 U.S.C. §§ 1981 and 1983.  (Compl., Dkt. No. 1.)  Pending is defendants' motion to dismiss.  (Dkt. No. 6.)  For the reasons that follow, defendants' motion is granted.

## II.  <u>Background</u>[1]

Quinones, a Hispanic male, began working as a patrolman for the Binghamton Police Department in March 2008.  (Compl. ¶¶ 8-9.)  After having been previously "passed over for the sergeant position despite having been [the] most qualified on several occasions," he was eventually promoted to sergeant in November 2012, (*id.* ¶ 11), and was promoted to lieutenant in 2016, (*id.* ¶ 17).

During his time in the department, Quinones "has been subjected to humiliation and ridicule," and "to discriminatory conduct on a daily basis." (*Id.* ¶¶ 12-13.)  For instance, Ryan repeatedly called Quinones "Ricky Ricardo," a character from "I Love Lucy," and "mimick[ed Quinones] when he was speaking Spanish by imitating him in a derogatory manner."  (*Id.*) Ryan also "compare[d]" Quinones to another Hispanic officer, Armando

---

[1]  The facts are drawn from Quinones' complaint, (Compl.), and presented in the light most favorable to him.

Marroquin, and told Quinones he was "'classy Spanish' and Armando was 'Mexican Spanish.'" (*Id.* ¶ 14.)  Ryan also made comments to Quinones that he was "good [at] jumping fences," and that, in his youth, Quinones "ran with gangs [and] knew how to steal cars and pick locks." (*Id.* ¶ 15.)

In 2018, Quinones, who "is the most qualified candidate on the list for [c]aptain," was "passed over," and a Caucasian male in the police department, who "was clearly less qualified than [Quinones] in that he had none of the . . . credentials . . . and lower test scores," was instead promoted to captain. (*Id.* ¶¶ 20-21.)

In July 2019, after applying and being "turned down" from a detective assignment, patrolman Christopher Hamlett filed a race discrimination claim with the City of Binghamton personnel department, and, in August 2019, filed a complaint with the New York State Division of Human Rights. (*Id.* ¶¶ 25-27, 33.)  In October 2019, Quinones submitted an affidavit to Hamlett's attorney in the pending race discrimination case, wherein Quinones provided an account of a conversation he had with Zikuski, who made racist remarks and told Quinones that "the reason [he] was not given the detective assignment is because . . . Ryan did not want him because of his race." (*Id.* ¶ 48.)

### III.  **Standard of Review**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  **Discussion**

At the outset, there is some dispute between the parties as to what claims Quinones has alleged.  Although defendants understandably, but unnecessarily, have addressed several claims, (Dkt. No. 6, Attach. 1 at 7-17), the only enumerated cause of action in Quinones' complaint is a First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983, (Compl.).  To be sure, it is not the responsibility of the court, or defendants, to make guesses as to what a represented party intended, and, given that plaintiff is represented by counsel—and not entitled to the liberality reserved for *pro se* litigants—the court will not, and does not, construe claims not specifically alleged in the complaint.  *See Towner v. Hogan*, No. 3:15-cv-963, 2019 WL 1396962, at *2 (N.D.N.Y. Mar. 28, 2019).  Accordingly, the only cause of action before the court is one alleging First Amendment retaliation.

Defendants argue that Quinones' First Amendment retaliation claim fails because he does not allege that he spoke as a citizen on a matter of public concern, and he fails to allege an adverse action causally related to his submission of the affidavit in connection with patrolman Hamlett's race discrimination case.  (Dkt. No. 6, Attach. 1 at 18-21.)  Specifically, defendants argue that, as to the affidavit, the court cannot glean whether Quinones was speaking on a matter of public concern because he did not attach the affidavit to his complaint, and, further, Quinones does not plead any facts to suggest that he suffered any adverse employment action after submitting the affidavit.  (Dkt. No. 6, Attach. 1 at 21.)  In response, Quinones maintains that he "alleges in paragraph 48 of his complaint" what he wrote in the affidavit; he "was speaking out against racism and that was not an area where he had any official duties"; and his "duties did not extend to providing sworn testimony."  (Dkt. No. 8 at 13-14.)

Where a plaintiff claims that he was retaliated against in violation of the First Amendment, he must demonstrate that "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech."  *Montero v. City of Yonkers*, 890

F.3d 386, 394 (2d Cir. 2018) (alterations and citation omitted).

With regard to the first element, a plaintiff must demonstrate not only that he spoke as a citizen, but also "that the speech at issue was on a matter of public concern." *Id.* at 399 (citation omitted). "Whether speech is on a matter of public concern is a question of law, and is to be answered by the court after examining the content, form, and context of a given statement, as revealed by the whole record." *Id.* (internal quotation marks and citation omitted).

Next, a plaintiff must show that, as a result of the constitutionally protected speech, he suffered an adverse employment action caused by the defendant. *See id.* at 401. "An adverse employment action may include discharging, refusing to hire, refusing to promote, demoting, reducing the pay, or reprimanding an employee." *Id.*

To satisfy the "causal connection" prong, the allegation "'must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech.'" *Stajic v. City of N.Y.*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.

6

1999)).  "'Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus.'"  *Id.* (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003)).

Here, assuming that Quinones' submission of his affidavit in a fellow officer's litigation is a protected activity, Quinones fails to allege a causal connection between that activity and some adverse action.  Quinones merely alleges that, "despite the retaliatory measures taken against him," he "nevertheless submitted an affidavit to the attorney representing Hamlett in the human rights claim."  (Compl. ¶ 48.)  Indeed, such allegations are entirely conclusory, and there are no facts from which the court can plausibly infer that Quinones suffered any adverse action after submitting his affidavit.  *See Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ.*, No. 03 Civ 5942, 2006 WL 2583019, at *19 (S.D.N.Y. Sept. 6, 2006) ("To establish a causal relationship between protected activity and adverse employer conduct, a plaintiff must, at a minimum, introduce evidence that the protected activity in question occurred before the adverse employment action.").  Accordingly, defendants' motion to dismiss Quinones' retaliation

7

claim is granted, and the claim is dismissed.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 6) is

**GRANTED**; and it is further

**ORDERED** that Quinones' complaint (Dkt. No. 1) is **DISMISSED**; and

it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 11, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge