**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALAN QUINONES,**

                **Plaintiff,**

                **v.**

**CITY OF BINGHAMTON et al.,**

                **Defendants.**
_____

**3:19-cv-1460**
**(GLS/ML)**

## MEMORANDUM-DECISON AND ORDER

### I. Introduction

Plaintiff Alan Quinones commenced this action against defendants the City of Binghamton; Richard David, Mayor of the City of Binghamton; Joseph Zikuski, Chief of Police for the City of Binghamton; and John Ryan, Assistant Chief of Police for the City of Binghamton pursuant to 42 U.S.C. §§ 1981, 1983. (Compl., Dkt. No. 1.) Following an appeal, the Second Circuit vacated in part and remanded the court's dismissal of this action, (Dkt. Nos. 12, 17), and defendants then renewed their motion to dismiss, (Dkt. Nos. 19, 20), which is currently pending, (Dkt. No. 6). For the reasons that follow, the motion is granted in part and denied in part as described below.

## II. **Background**[1]

Quinones brought this action against defendants in November 2019, asserting that he had been subject to discrimination and retaliation in violation of Sections 1981 and 1983. (*See generally* Compl.) Defendants moved to dismiss, (Dkt. No. 6), which the court granted in a Memorandum-Decision and Order (hereinafter "the August 2020 MDO"), (Dkt. No. 12). The court found that the only enumerated cause of action in the complaint was a First Amendment retaliation claim, and that Quinones did not sufficiently plead that claim. (*See generally id.*)

On appeal, the Second Circuit issued a mandate (hereinafter "the Mandate"), which affirmed in part, and vacated and remanded in part, the August 2020 MDO and the corresponding judgment. (Dkt. No. 17, Attach. 1.) Specifically, the Second Circuit held that this court "correctly concluded that Quinones failed to state a claim that he was punished for engaging in protected First Amendment activity," but that Quinones' complaint "sufficiently informed" defendants that he was bringing a discrimination claim, "despite his failure to enumerate it as a separate

---

[1] The court assumes the parties' familiarity with the underlying facts, which are stated in full in the court's August 11, 2020 Memorandum-Decision and Order. (Dkt. No. 12.)

2

cause of action." (*Id.* at 8, 16.) In other words, the Second Circuit held that this court should have, but did not, address whether Quinones set forth sufficient allegations to maintain a discrimination claim, and remanded the matter back to the court to conduct that analysis. (*See generally id.*)

In accordance with the court's June 14, 2021 Text Only Order, (Dkt. No. 18), the parties then filed a joint status report, (Dkt. No. 19). Quinones maintained that the Second Circuit concluded that the complaint asserts a Section 1981 employment discrimination claim and sought to proceed to a Rule 16 conference, and defendants sought to renew their motion to dismiss, or, in the alternative, leave to renew or to re-submit a motion to dismiss on the remaining issue. (*Id*.) In response, the court revived defendants' motion to dismiss, and explained that, contrary to Quinones' position in the joint status report, the Mandate specifically noted that identification of a Section 1981 claim in the complaint "is separate from whether the complaint's factual allegations show that [the] claim has substantive plausibility." (Dkt. No. 20 (quoting Dkt. No. 17, Attach. 1 at 16).) The court permitted the parties to file supplemental briefs. (*Id.*) Defendants filed a supplemental brief, (Dkt. No. 21), but Quinones did not.

3

Now pending is defendants' revived motion to dismiss with respect to Quinones' discrimination claim. (Dkt. No. 6.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. Discussion

As contemplated by the Mandate, (Dkt. No. 17, Attach. 1), as well as the parties' joint status report, (Dkt. No. 19), the only claim that remains in Quinones' complaint is a Section 1981 discrimination claim against all defendants. Quinones asserts that he has "consistently and systematically [been] the victim of discriminatory treatment based on his Hispanic origin." (Compl. at 1.) Specifically, he alleges that Ryan "repeatedly" called him "Ricky Ricardo," "mimick[ed] [him] when he was speaking Spanish by imitating him in a derogatory manner," and made numerous other insulting comments about his background. (*Id.* ¶¶ 8-24.) He also alleges that a patrol officer directed an ethnic slur towards a Hispanic colleague, and that, at times, he was subject to harassment "almost on a daily basis." (*Id.*

4

¶¶ 13, 19.)

Quinones maintains that "but for the discriminatory conduct based on his Hispanic origin," he "would likely have been further advanced in his career." (*Id.* at 1.)  In particular, and most importantly to his claim, Quinones asserts that he was "passed over" for a promotion to Captain in 2018 for "a Caucasian who was clearly less qualified." (*Id.* ¶ 21.)

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 prohibits racial discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Calvelos v. City of New York*, No. 19 civ. 6629, 2020 WL 3414886, at *9 (S.D.N.Y. June 22, 2020) (citation omitted).  A plaintiff bringing a claim under Section 1981 "may allege that discrimination occurred in the form of discrete adverse employment actions, as well as by means of conduct creating a hostile work environment." *Brown v. Montefiore Med. Ctr.*, No. 19 CV 11474, 2021 WL 1163797, at *4 (S.D.N.Y. Mar. 25, 2021) (internal quotation marks and citation omitted).

5

## A. Timeliness

As a preliminary matter, defendants argue that Quinones' discrimination claim is time-barred to the extent that it is based on the alleged derogatory comments made by Ryan in 2014 or that he was not promoted to Sergeant until 2012 and to Lieutenant until 2016. (Dkt. No. 6, Attach. 1 at 9-10.) In response, Quinones argues that the continuing violation doctrine makes any claim based on these events timely. (Dkt. No. 8 at 7.)

The court agrees in part with defendants, (Dkt. No. 9 at 3-5), that the continuing violation doctrine does not apply to the extent that Quinones alleges that events that took place outside of the limitations period amount to adverse employment actions for purposes of maintaining his claim. *See Oliver v. N.Y. State Police*, No. 1:15-cv-444, 2020 WL 1989180, at *29 (N.D.N.Y. Apr. 27, 2020) ("[T]he continuing violation doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." (internal quotation marks and citation omitted)); *see also Bamba v. Felton*, 758 F. App'x 8, 11 (2d Cir. 2018) ("'[T]ermination, failure to promote, denial of transfer, or refusal to hire' are

discrete retaliatory acts insufficient to invoke the continuing violation doctrine." (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002)). In other words, because Quinones' failure to be promoted before 2012 and 2016 are discrete acts, the continuing violation does not apply.

However, discriminatory conduct that occurred outside of the limitations period can still be used as "background evidence" in support of his claim that he suffered an adverse employment action within the limitations period—here, that he was not given a promotion in 2018 due to his Hispanic heritage. *See Hamlett v. City of Binghamton*, No. 3:20-cv-880, 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021). Further, the derogatory statements that Ryan allegedly made in 2014 are not "discrete acts" as contemplated by this rule, and, thus, because Quinones alleges that comments like these were made continuously up and until he commenced the instant action, his hostile work environment claim based on these comments is not time-barred. *See Roberts v. Sage Corp.*, No. 3:20-CV-365, 2021 WL 3617670, at *4 (N.D.N.Y. Aug. 16, 2021) ("[H]ostile work environment claims involve a repetitive pattern of conduct, rather than discrete acts. Therefore, by their nature, hostile work environment claims

7

more easily lend themselves to application of the continuing violation doctrine." (citations omitted)).

## B. Merits of Quinones' Claim

With respect to the merits of Quinones' claim, defendants argue that it should be dismissed because "his complaint is devoid of anything but conclusions and speculation regarding the purported failure to promote him to Captain," he has not set forth sufficient allegations to establish that he would have been promoted "but for" his Hispanic heritage, and the comments made to him by Ryan and other members of the Binghamton Police Department are not sufficiently "severe or pervasive" to sustain a discrimination claim based on a hostile work environment.  (Dkt. No. 6, Attach. 1 at 10-17; Dkt. No. 21 at 3-4.)

*1. Adverse Employment Action*

In order to plead a Section 1981 discrimination claim based on an adverse employment action, a plaintiff must show that "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (citation omitted); *see Pertillar v. AAA W. & Cent. N.Y.*, No. 5:16-cv-238, 2018 WL 583115, at *7 (N.D.N.Y. Jan. 26, 2018) ("The

8

standards applicable to [the plaintiff's] Section 1981 claims are the same as those applicable to his Title VII claims." (citations omitted)).

"As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him." *Vega*, 801 F.3d at 85. "An adverse employment action is a materially adverse change in the terms and conditions of employment . . . [that] is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Abboud v. Cty. of Onondaga, N.Y.*, 341 F. Supp. 3d 164, 179 (N.D.N.Y. 2018) (citation omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (citation omitted). As to the second element, the Supreme Court has recently held that to prevail on a Section 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S.Ct. 1009, 1019 (2020). As such, it is insufficient to merely plead that race was a motivating factor in the alleged discriminatory action. *See id*. at 1017-18.

9

With respect to Quinones' discrimination claim based on an adverse employment action, he alleges that he is of Hispanic heritage, that he was denied a promotion to Captain despite having "significant experience in grant writing, intelligence, [and] crime prevention," and, thus, being the most "qualified candidate on the list"; and that he was passed over for the promotion in favor of "a Caucasian who was clearly less qualified . . . in that he had none of [those] credentials and . . . had lower test scores." (Compl. ¶¶ 20-21.)  Moreover, he alleges that "but for the discriminatory conduct based on his Hispanic origin," he "would likely have been further advanced in his career." (*Id.* at 1.)  As such, although the complaint is far from a model of clarity, Quinones does allege that he is a member of a protected class, that he suffered an adverse employment action when he was denied the promotion, that he was qualified for the promotion, and that, but for his Hispanic heritage, he would have been promoted. (*See generally id.*)

Accordingly, at this early stage in the litigation, and accepting all of his allegations as true, Quinones has set forth sufficient allegations to maintain a Section 1981 discrimination claim based on an adverse employment action, if only just barely.  *See Levitant v. City of N.Y. Hum.*

10

*Res. Admin.*, 558 F. App'x 26, 29 (2d Cir. 2014) ("It is well-established that a failure to promote is an adverse employment action." (citation omitted)); *Craven v. City of N.Y.*, No. 19-CV-1486, 2020 WL 2765694, at *5 (S.D.N.Y. May 28, 2020) (denying a motion to dismiss a Section 1981 discrimination claim based on adverse employment actions, and finding that "the allegations of [the plaintiff's supervisor's] discriminatory comments and conduct . . . provide relevant background evidence by shedding light on Defendants' motivation[, and] . . . create a mosaic of information supporting an inference of discrimination").

Defendants' motion to dismiss in this regard is therefore denied.

2.   *Hostile Work Environment*

To establish a hostile work environment claim under Section 1981, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (internal quotation marks and citation omitted). The hostile work environment test has objective and subjective elements: "the conduct complained of must be severe or pervasive enough that a

11

reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citations omitted).

When deciding "whether a plaintiff suffered a hostile work environment, [the court] must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016) (internal quotation marks and citation omitted). "[W]hether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." *James v. Van Blarcum*, 782 F. App'x 83, 85 (2d Cir. 2019) (citation omitted). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321 (citation omitted).

However, the Second Circuit "ha[s] repeatedly cautioned against setting the bar too high" in this context, holding that "a plaintiff need only

12

plead facts sufficient to support the conclusion that []he was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted).

With respect to the existence of a hostile work environment, Quinones alleges that Ryan "repeatedly" called him "Ricky Ricardo," "mimick[ed] [him] when he was speaking Spanish by imitating him in a derogatory manner," and made numerous other insulting comments about his background, and that other Hispanic officers have been called racial slurs. (*Id.* ¶¶ 8-24.) According to Quinones, this alleged race-based harassment has been constant and continuous, and has been perpetrated by both supervisors and patrol officers at the Binghamton Police Department. (*Id.*) As to Zikuski, Quinones asserts that, as Chief of Police, he knew, or should have known, about the alleged harassment. (*Id.* ¶ 57.)

At this juncture, the court is satisfied that Quinones has established that he has faced discriminatory ridicule that is sufficiently severe or pervasive to alter the conditions of his employment, and, thus, defendants' motion to dismiss in this regard is denied. *See Avent v. Target Corp.*, No.

13

1:19-CV-1565, 2021 WL 3089120, at *6 (N.D.N.Y. July 22, 2021) ("Plaintiff alleges that [defendants] failed to address harassment directed at him by white employees.  At this stage, that is enough, albeit barely, to keep them in the case." (citations omitted)); *Ramirez v. NYP Holdings, Inc.*, No. 18 Civ. 12058, 2020 WL 470011, at *12 (S.D.N.Y. Jan. 29, 2020) (denying a motion to dismiss a hostile work environment claim, based on allegations that, throughout his employment, the plaintiff was subjected to racial slurs and degrading comments regarding his Hispanic heritage, and that "he and other Hispanic employees were isolated and given the worst work assignments on the least desirable shifts"); *see also Patane*, 508 F.3d at 114 ("[W]hether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry." (citation omitted)).

Defendants are free to renew their arguments on summary judgment when the parties and the court have the benefit of a more developed factual record.

**C.    Personal Involvement**

Defendants argue that Quinones' claim must be dismissed for the independent reason that he has not alleged their personal involvement in the alleged unlawful conduct.  (Dkt. No. 6, Attach. 1 at 10-14.)  "It is well

14

settled in this Circuit that 'personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"[2] *See Johnson v. Miller*, No. 9:20-CV-622, 2020 WL 4346896, at *9 (N.D.N.Y. July 29, 2020) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  That is to say, plaintiffs "must allege a tangible connection between the acts of the defendant and the injuries suffered."  *Id.* (internal quotation marks and citation omitted).  As to supervisory liability, there is no "special test," and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 614 (2d Cir. 2020) (internal quotation marks and citation omitted).

Based on this standard, Quinones' argument that personal involvement on David's part has been established "by way of omission," based merely on his allegation that he "failed to take any ameliorative action," after receiving notice of "pervasive racism" less than two weeks before Quinones commenced the instant action, (Dkt. No. 8 at 3, 15;

---

[2] The Mandate makes clear that the Second Circuit interprets Quinones' claim as a Section 1981 claim brought under Section 1983. (Dkt. No. 17, Attach. 1 at 14 n.4.)

15

Compl. ¶¶ 52-54), is unavailing. Indeed, the complaint is completely devoid of any allegations that David's own individual actions violated Quinones' rights. (*See generally id.*) Accordingly, the Section 1981 claim is dismissed as against David for lack of personal involvement.

However, contrary to defendants' contention, (Dkt. No. 6, Attach. 1 at 10-14), Quinones has established personal involvement on the part of Zikuski and Ryan. Ryan is alleged to have been the main culprit in the discriminatory conduct, at least with respect to Quinones' hostile work environment claim. (Compl. ¶¶ 12-15.) And, as to Zikuski, accepting the allegations as true at this stage, it can reasonably be inferred that he is the person who ultimately denied Quinones a promotion to Captain because of his Hispanic heritage, as Zikuski is the Chief of the Binghamton Police Department and is alleged to have told Quinones that he would never be a Captain because his career is "done." (*Id.* ¶¶ 4, 29.) *See Calvelos*, 2020 WL 3414886 at *12 ("Where a defendant is meaningfully involved in the process leading to the adverse employment action, that defendant may be held liable for the action." (internal quotation marks and citation omitted)).

## D. *Monell* **Claim**

Defendants argue that Quinones' Section 1981 claim should be dismissed against the City because he "fails to allege that any discrimination . . . [was a] product[] of a policy, custom, or practice of the City." (Dkt. No. 6, Attach. 1 at 23-24.) As an initial matter, claims cannot be brought against municipalities under Section 1981 alone, and, instead, must be raised through a Section 1983 action. *See Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018). However, in the Mandate, the Second Circuit construed that Quinones' "claims against [the City], incorrectly brought under Section 1981 alone, as [Section] 1983 claims." (Dkt. No. 17, Attach. 1 at 14 n.4 (internal quotation marks and citations omitted).)

A municipality may be liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish a municipal policy or custom, a plaintiff must allege (1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the

17

alleged civil rights violation; (3) a practice so widespread that it constitutes "a custom or usage"; or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates. *See Green v. City of New York*, 465 F.3d 65, 80-82 (2d Cir. 2006).

Quinones alleges in his complaint that Zikuski's conduct was done "on behalf of the City" because he is a final policymaker. (Compl. ¶ 58.) Although it might ultimately be revealed during discovery that this is not true, it is clear that Zikuski may be considered a policymaker for purposes of *Monell* liability at this phase of the litigation. *See Griffin v. Village of Frankfort*, No. 10-CV-627, 2012 WL 4491276, at *4 (N.D.N.Y. Sept. 28, 2012) ("Thus, the record certainly demonstrates or suggests that [the Chief of Police] has final policy-making authority in the Village, at least insofar as police matters go.").

Accordingly, defendants' motion to dismiss in this regard is denied, and, just like any other argument made in their motion to dismiss, defendants are free to renew it at summary judgment.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 6) is

**GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to Quinones' Section 1981 claim against David, which claim is **DISMISSED**; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that a Section 1981 discrimination claim remains against the City of Binghamton, Zikuski, and Ryan; and it is further

**ORDERED** that the remaining defendants respond to the complaint (Dkt. No. 1) within the time allotted by the Rules; and it is further

**ORDERED** that the parties contact Magistrate Judge Miroslav Lovric to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 5, 2022
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge

19